UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMONE S. KNOX,                                    Case No. 17-10900

      Plaintiff                                      Gershwin A. Drain
v.                                                 United States District Judge

BRANDON SCRUGGS, *et al*,                          Stephanie Dawkins Davis
                                                   United State Magistrate Judge

      Defendants.
_____/

## REPORT AND RECOMMENDATION
## <u>MOTION TO DISMISS (Dkt. 15)</u>

## I.    PROCEDURAL HISTORY

Plaintiff filed this *pro se* prisoner civil rights action on March 21, 2017, alleging that officers employed by the County of Oakland used excessive force against him during his arrest for domestic violence. (Dkt. 1).[1] On March 23, 2017, this matter was referred to the undersigned for all pretrial proceedings. (Dkt. 6). On May 22, 2017, the Oakland County defendants filed a motion to dismiss the complaint. (Dkt. 15). Plaintiff filed a response on July 7, 2017. (Dkt. 17). Defendants filed their reply on July 20, 2017. (Dkt. 18). This matter is now ready for report and recommendation.

---

[1] The City of Pontiac is named as a defendant, but has not yet been served with the summons and complaint.

For the reasons set forth below, the undersigned recommends that defendants' motion to dismiss be **DENIED** in part and **GRANTED** in part.

## II.     FACTUAL BACKGROUND

Plaintiff brings this § 1983 excessive force lawsuit against Oakland County Sheriff's deputies Scruggs, Braddock and Garrett in their individual and official capacities, an "Unknown Supervisor" in his/her individual and official capacity, and Oakland County and the City of Pontiac.  (Dkt. 1, p. 5).  Plaintiff alleges (1) an excessive force claim against defendant Scruggs, (2) a failure to intervene claim against defendants Garrett and Braddock, and (3) a failure to adequately supervise claim against the "Unknown Supervisor," Oakland County, and the City of Pontiac.  (Dkt. 1, pp. 3 and 6).  Plaintiff seeks unspecified "injunctive relief" and money damages.  Plaintiff does not allege that he sustained any injuries from the alleged excessive force other than the fact that he "was in fear."  (Dkt. 1, p. 6).

Plaintiff alleges that on May 8, 2016, he was spending the night at 684 Melrose Street in Pontiac MI, when he awoke to "someone kicking or ramming on the front door."  He went to the door and saw that it "was nearly off the hinges."  Plaintiff "[i]mmediately asked who was kicking on the door."  He determined it was "three police officers" (presumably defendants Scruggs, Garrett, and Braddock).  One of the deputies answered, "The Police!  Open the fucking door!"  Plaintiff then "attempted to open the door but could not, due to the damage the

officers did to it." (Dkt. 1, Pg ID 3). As plaintiff was trying to open the door, one of the deputies "started ramming on the door again." Plaintiff yelled for them to "stop kicking/ramming on the door." The deputies stopped, and then one of them said "Open the fucking door or you'll be sorry." (Dkt. 1, Pg ID 6). Plaintiff claims that he tried "several times to open the door." *Id*. He "asked the owner of the house, Sonya Jancevski, if there was another door to the house." She told him there was a back door, and that she "was going outside to see what they wanted." *Id*. When she exited the house, Plaintiff "closed the door behind her, and watched [through a window] as she approached the police…" *Id*. He saw that "they grabbed her and put her in the back of one of the police cars." Plaintiff alleges that the deputies then "entered the house through the back door, without my knowledge." *Id*. Plaintiff's back was toward them when the police entered and he "heard someone yell 'Freeze!'…simultaneously to [Plaintiff] being tased by police officer Brandon Scruggs." *Id*. Plaintiff alleges that he was never given "the opportunity to turn around." *Id*. According to the complaint, the next thing plaintiff remembers is "waking up, being kicked in the rib cage by police officer, Brandon Scruggs, handcuffed on the floor with a taser prong in my back." *Id*. Plaintiff was then placed under arrest. *Id*.

Stemming from this incident, plaintiff pleaded no contest and was convicted of (1) Domestic Violence against Sonya Jancevski (Mich. Comp. Laws

§ 750.81(2)) and (2) Assaulting/Resisting/Obstructing a Police Officer (Mich.

Comp. Laws § 750.81d(1). (Dkt. 15, Ex. A, Information; Ex. G, Judgment of

Sentence). The police report served as a factual basis for the plea. (Dkt. 15, Ex. B,

Plea Transcript, pp. 14-15; Ex. C, Report). Per the report, plaintiff had assaulted

Ms. Jancevski and barricaded himself inside the home. The deputies eventually

gained access to the home by kicking open the back door. Once inside, plaintiff

began to flee out the front door, and Deputy Scruggs deployed his taser to subdue

him. Plaintiff was then handcuffed on the front porch and taken into custody

without incident. *Id.* According to defendants, the Court may consider these

documents from plaintiff's criminal case when deciding this motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6) because they are matters of public

record. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *New England*

*Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501

(6th Cir. 2003) (abrogated on other grounds by *Merck & Co. v. Reynolds*, 559 U.S.

633 (2010)).

## III. DISCUSSION

### A. <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his [or her] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)).

The Supreme Court raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 677. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And although the Court must accept all well-pleaded factual allegations in the

complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.

In ruling on defendant's motion, the Court may consider the pleadings of the parties, including copies of any written instrument(s) attached to a pleading as their attachment thereto renders them a part of the pleading under Fed. R. Civ. P. 10(c). *See also Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 326, 335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted to motion for summary judgment by court's consideration of documents that were not attached to counterclaim, but were attached to the complaint and the answer to counterclaim).  The undersigned also recognizes that generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56.  However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if

they are referred to in the plaintiff's complaint and are central to h[is] claim'")
(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th
Cir. 1993)).  "[I]n general, a court may only take judicial notice of a public record
whose existence or contents prove facts whose accuracy cannot reasonably be
questioned." *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

      B.    <u>*Heck v. Humphrey*</u>

Defendants first argue that plaintiff's excessive force claim is barred by
*Heck v. Humphrey*, 512 U.S. 477 (1994).  Defendants explain that to determine
whether *Heck* precludes plaintiff's § 1983 excessive force claim, the Court must
first determine whether a judgment in plaintiff's favor on this claim would
necessarily imply the invalidity of his conviction for resisting arrest under Mich.
Comp. Laws § 750.81d(1).  The Sixth Circuit has recognized two circumstances
under which an excessive force claim might conflict with a conviction.  "The first
is when the criminal provision makes the lack of excessive force an element of the
crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck*, 512
U.S. at 486 n. 6).  "The second is when excessive force is an affirmative defense to
the crime…." *Id*.  In each of these circumstances, the § 1983 suit would "seek[ ] a
determination of a fact that, if true, would have precluded the conviction." *Id*.

Defendants acknowledge that Mich. Comp. Laws § 750.81d(1) -- which
provides that "an individual who assaults, batters, wounds, resists, obstructs,

opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony" -- does not expressly include as an element a lack of excessive force. However, defendants point to *People v. Moreno*, 491 Mich. 38 (2012), in which the Michigan Supreme Court clarified that the lawfulness of the officer's conduct (and thus the absence of excessive force) is an element of that provision. In *Moreno*, the Michigan Supreme Court held that Mich. Comp. Laws § 750.81d(1) did not "abrogate the common-law right to resist unlawful arrests." *Id*. at 634. As the Michigan Court of Appeals later observed, the *Moreno* court "did not explicitly state, in so many words, that the lawfulness of the officers' actions is an 'element' of resisting or obstructing a police officer," but "it is clear that under Moreno, as at common law, the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under Mich. Comp. Laws § 750.81d." *People v. Quinn*, 305 Mich. App. 484 (2014). Based on the foregoing, defendants maintain that the first basis for applying *Heck* applies here.

Defendants also argue that the second basis for applying *Heck* -- i.e., where the plaintiff's claim could have been asserted in criminal court as an affirmative defense – applies as well. Defendants rely on *People v. Palacios*, 2017 WL 1967474, at *6 (Mich. App. 2017) for the proposition that "right to resist police use of excessive force" is an affirmative defense to the crime of resisting or obstructing

a police officer under Mich. Comp. Laws § 750.81d.  Thus, defendants maintain that the second part of *Heck* also applies here.

Defendants also acknowledge that for *Heck* to bar a § 1983 claim, success on the claim must necessarily imply the invalidity of the conviction.  Accordingly, both the § 1983 claim and the conviction must arise out of the same events, and an excessive force claim is not barred when the alleged use of force occurred after arrest.  *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 611 (6th Cir. 2014).  Post-arrest excessive force cases would not be "inextricably intertwined" with the suspect's resistance to arrest.  Here, plaintiff alleges that he was tasered and then kicked in the rib cage before he was placed under arrest.  Thus, consistent with *Hayward*, defendants argue that plaintiff's excessive force claim arises from the same conduct that led to his conviction and so would necessarily imply the invalidity of the conviction.  According to defendants, plaintiff's claim is not that defendant Scruggs used excessive force after plaintiff stopped resisting or to stop his resistance.  Rather, defendants maintain that plaintiff's claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by defendant Scruggs for no reason.  Thus, according to defendants, plaintiff's suit "squarely challenges the factual determination that underlies his conviction for resisting an officer" and, if he prevails, "he will have established that his criminal

conviction lacks any basis.  This is exactly the type of claim that is barred by *Heck*."  *Parvin v. Campbell*, 641 Fed. Appx. 446 (6th Cir. 2016).

In response, plaintiff asserts that he is not challenging his criminal conviction and not claiming that his arrest was false.  Rather, he only claims that defendants effectuated a lawful arrest in an unlawful manner.  Plaintiff also says that defendants' summary of the facts is wrong because they assume that he was placed under arrest *after* he was assaulted by Scruggs.  Plaintiff maintains that he was placed in handcuffs before he was kicked in his rib cage and unlawfully tasered before being handcuffed.  He also says that, at no time, did any officer say that he was under arrest.  According to plaintiff, it is clearly excessive force for Scruggs to have repeatedly kicked him in the rib cage after plaintiff was unconscious and such a claim does not challenge the factual basis of plaintiff's conviction.

"[T]he Sixth Circuit has held that a conviction for resisting or obstructing arrest under Michigan Compiled Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force."  *Steele v. Twp. of Flint*, 2015 WL 6470887, at *4 (E.D. Mich. Oct. 27, 2015) (Lawson, J.) (citing *Schreiber*, 596 F.3d at 334).  "Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state

must prove as an element of the crime that the police did not use excessive force."

*Schreiber*, 596 F.3d at 334 (citing *People v. Ventura*, 262 Mich. App. 370, 686 (2004) (overruled by *People v. Moreno*, 262 Mich. App. 370 (2004))).  The *Heck v. Humphrey* argument raised by defendants has been squarely rejected in this district.  For example, in *Hawkins v. Detroit Pub. Sch.*, 2017 WL 2951627, at *6 (E.D. Mich. May 5, 2017) (Grand, M.J.), report and recommendation adopted, 2017 WL 2962876 (E.D. Mich. July 12, 2017) (Leitman, J.), the Court noted that *Moreno* and *Ventura* were concerned only with an individual's right to resist an attempt to arrest which was unlawful.  Neither case considered whether the presence of excessive force during an ensuing confrontation would invalidate the resisting arrest charge.  *Id.* at *6.  Thus, in *Hawkins* the court rejected the notion that post-*Moreno*, a conviction under Mich. Comp. Laws § 750.81d(1) implies a factual determination that officers did not use excessive force in effectuating an arrest.  *Id.*  In doing so, the court relied on another recent decision in this district in which the court concluded that *Schreiber* remained good law, despite *Moreno*:

> [T]he use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful.  This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck's* bar to a § 1983 excessive-force suit.");

*Johns v. Oakland Cty.*, 2016 WL 4396065, at *5 (E.D. Mich. 2016) (J. Michelson); *see also Nelson v. Green Oak Township*, 2016 WL 233100, at *19 (E.D. Mich. Jan.

20, 2016) (Borman, J.) ("[S]uccess on Plaintiff's § 1983 claim for excessive force would not necessarily imply the invalidity of her conviction for resisting arrest.").

This issue was also recently examined by District Judge David M. Lawson in *Carter v. Carter*, 2017 WL 1160623, at \*8 (E.D. Mich. 2017), who agreed with the analysis set forth in *Johns* and *Nelson*.  The *Carter* opinion found that these decisions "are consistent with constitutional principles."  *Id*. at \*9.  The court explained that the "lawfulness" of an arrest is measured by whether it was supported by probable cause.  *Id*. (citing *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994)); *see also Florida v. Royer*, 460 U.S. 491, 497-501 (1983); *Lilly v. City of Erlanger*, 598 Fed. Appx. 370, 375-76 (6th Cir. 2015) ("[A] determination of probable cause to arrest depends simply on whether, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed an offense.") (quotation marks and alterations omitted).  Thus, as explained by Judge Lawson:

> It follows, then that a police officer can make a "lawful" arrest—that is, one that is supported by probable cause— but still violate the arrestee's Fourth Amendment rights by effectuating that arrest through the use of excessive force.  If the arrestee resists, and later is convicted of resisting that arrest, a subsequent lawsuit charging the arresting officer with excessive force would not

> "implicitly question the validity of [the] conviction," and
> therefore *Heck* would not bar the action.

*Id*. at *9.  Nothing in *Palacios*, cited by defendants, changes this analysis.  While

defendants claim *Palacios* stands for the proposition that the right to resist

excessive force is an affirmative defense to a charge under Mich. Comp. Laws

§ 750.81d(1), *Palacios* merely says that if there were an error made by failing to

instruct the jury that the arrest must be lawful, any such error was harmless

because the obstructive actions by the defendant occurred before the alleged

excessive force was applied by the officer.  *Id*. at *5.  *Palacios* did not clearly hold

that the use of excessive force would invalidate an otherwise lawful arrest for

resisting or obstructing or that a "lawful arrest" under Michigan law now includes

the absence of the use of any excessive force.  The undersigned is bound by the

holding in *Schreiber* and is persuaded by the post-*Moreno* decisions from this

Court that *Schreiber* remains good law.[2]  Thus, plaintiff's excessive force claim is

not barred by *Heck v. Humphrey*.

---

[2] Defendants' reliance on *Cummings v. City of Akron*, 418 F.3d 767 (6th Cir. 2005) is
unavailing, as ably explained by Judge Grand in *Hawkins*:

> But *Cummings* is distinguishable from the instant case in important respects.
> First, *Cummings* involved Ohio law, which differs significantly from Michigan
> law.  As the Sixth Circuit explained, "[u]nder Ohio law, Cummings was barred
> from raising the illegality of the entry into his home or the unreasonableness of
> the officers' initial seizure of his person as defenses to assault.  The traditional
> common law rule allowing individuals to resist illegal arrests has been explicitly
> disregarded by the Ohio Supreme Court."  *Id*. at 683.  As discussed above, the
> *Moreno* court recently ruled that the opposite is true in Michigan.  *See Moreno*,

C.   <u>Qualified Immunity – Individual Defendants</u>

Even if the Court finds that the *Heck* doctrine does not apply in this situation, defendants assert that dismissal of the individual capacity claims is appropriate under the doctrine of qualified immunity.  Sixth Circuit cases establish that it is not excessive force for the police to use a taser or kick someone when the person is actively resisting arrest.  *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (Summarizing cases and holding that, "[w]hen an arrestee actively resists arrest…, the police can constitutionally use a taser or a knee strike to subdue him.").  Active resistance includes "physically struggling with, threatening, or disobeying officers."  *Id*. at 641.  According to defendants, regardless of plaintiff's characterization of the arrest in his complaint, it is apparent from plaintiff's

---

491 Mich. at 626–27, 629 (holding that in Michigan there exists a "common-law right to resist an unlawful arrest").  Second, whereas in the *Cummings* case involving Ohio law, the Sixth Circuit found that "Cummings could have raised excessive force as a defense to the assault charge," in the Michigan case by a different plaintiff with the same last name, the Michigan Court of Appeals wrote that "*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest" under Michigan law.  *Cummings*, 2012 WL 2579678, at *2 n. 3.  Accordingly, it is not clear that the Sixth Circuit's reasoning regarding Cummings' excessive force claim under Ohio law would apply here.

*Hawkins*, at *7 (footnote omitted).  Similarly, defendant's reliance on *Parvin v. Campbell*, 641 Fed. Appx. 446, 449 (2016), is also misplaced, as explained by Judge Grand: "That case arose in Tennessee, and the Sixth Circuit explained that, '[u]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force.'  Again, Michigan law is different because in Michigan an officer's use of excessive force is not a defense to an otherwise valid arrest."  *Hawkins*, at *7.

criminal conviction that he was actively resisting the arrest.  Moreover, when considering that the deputies were responding to a domestic violence incident where plaintiff had barricaded himself inside the house, defendants assert that the amount of force used as alleged by plaintiff was objectively reasonable to subdue him to make the arrest.

As to the failure to intervene claim, defendants Garrett and Braddock maintain they are entitled to qualified immunity.  According to defendants, plaintiff has not alleged any facts in his complaint to establish a prima facie case for failure to intervene against defendants Garrett and Braddock.  Plaintiff alleges a single taser deployment and a single kick in the rib cage by defendant Scruggs, both quick and spontaneous acts.  According to defendants, there is nothing in the Complaint to imply that defendant Garrett or defendant Braddock knew that plaintiff was going to be tasered or kicked and had the opportunity and the means to prevent these acts from happening.  Thus, defendants maintain that plaintiff's failure to intervene claim against defendants Garrett and Braddock should be dismissed.

In response, plaintiff asserts that defendants' use of force on him while unconscious is plainly unreasonable.  Plaintiff also contends that using force on an unconscious person would leave no doubt in the mind of a reasonable person that the conduct was unconstitutional.  As to the failure to intervene claim, plaintiff

again suggests that defendants are twisting the facts.  Contrary to defendants'

motion, plaintiff says he did not allege a "single kick" in the rib cage by Scruggs.

Rather, plaintiff says he was kicked multiple times and defendants Garrett and

Braddock had the opportunity and means to stop from Scruggs from assaulting

him.

In raising qualified immunity via a motion to dismiss, defendants raise such

issues best left addressed via summary judgment:

> Although an officer's "entitle[ment] to qualified
> immunity is a threshold question to be resolved at the
> earliest possible point," that point is usually summary
> judgment and not dismissal under Rule 12.  *See Evans-
> Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch.
> Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J.,
> concurring) (observing that the fact-intensive nature of
> the applicable tests make it "difficult for a defendant to
> claim qualified immunity on the pleadings before
> discovery" (emphasis in original)); *see also Jacobs v.
> City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000)
> (Easterbrook, J., concurring) ("Rule 12(b)(6) is a
> mismatch for immunity and almost always a bad ground
> of dismissal."); *Chesser v. Sparks*, 248 F.3d 1117, 1121
> (11th Cir. 2001) ("[Q]ualified immunity is typically
> addressed at the summary judgment stage of the case.");
> *Grose v. Caruso*, 284 Fed. Appx. 279, 283 (6th Cir.
> 2008) ("[T]he standard for a 12(b)(6) motion is whether
> the allegations, if taken as true, could state a claim upon
> which relief may be granted, [and] dismissal of
> Appellants on the basis of qualified immunity is
> premature.").

*Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017) (quoting *Wesley v. Campbell*,

779 F.3d 421, 433-34 (6th Cir. 2015) (alterations in original) (citations omitted)).

There are circumstances where the defense of qualified immunity may be addressed in a motion to dismiss the complaint.  *See Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."); *see also Colson v. City of Alcoa, Tenn.*, 2017 WL 4019596 (E.D. Tenn. 2017).  Yet, in those cases, the Court merely determined that the facts of the complaint made plausible allegations sufficient to survive a qualified immunity challenge.  That is, do the allegations in the complaint state a claim for relief and was alleged constitutional right clearly established at the time of the alleged violation?  *Peatross*, 818 F.3d at 242-245.  Such an analysis, in the context of Rule 12(b)(6) must assume the truth of the factual allegations in the complaint.

In contrast, defendants' motion would require the Court to assume that, contrary to the complaint, all force used at all times against plaintiff was objectively reasonable and that plaintiff was actively resisting arrest at all times while force was applied to him.  As to the failure to intervene claim, defendants' motion would also require the Court to assume that defendants Garrett and Braddock never had an opportunity to stop Scruggs from using excessive force.

Defendants' spin on the facts in plaintiff's complaint goes a step too far. Plaintiff does not allege a "single kick." Rather, plaintiff says he remembers "being kicked" by Scruggs as he was waking up after being tasered. Indeed, plaintiff's complaint suggests the use of force while plaintiff was unconscious, which suggests both that force was used while plaintiff was not resisting and that defendants Garrett and Braddock had an opportunity to intervene to prevent such a use of force. It is simply not appropriate for the Court to make the factual assumptions urged by defendants in this procedural context. Notably, a plaintiff is not required to plead facts in the complaint which respond to or refute a defendant's qualified immunity defense. *Hendricks v. Mohr*, 2017 WL 2991687, *4 (S.D. Ohio 2017) (citing *Goad v. Mitchell*, 297 F.3d 497, 501-05 (6th Cir. 2002) (holding that there is no heightened pleading requirement for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity, citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)). Thus, defendants are not entitled to qualified immunity at this time.

> D.    "Unknown Supervisor" Claim

Plaintiff's individual capacity claim against the "Unknown Supervisor" for failure to supervise fails. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *See Monell v. Dep't of Social Services*, 436 U.S.

658, 691 (1978).  A supervisor is not liable for failing to train or supervise unless

he or she either encouraged the specific incident of misconduct or otherwise

directly participated in it.  *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  "At

a minimum a plaintiff must show that the official at least implicitly authorized,

approved, or knowingly acquiesced in the unconstitutional conduct of the

offending officers."  *Id*.  According to defendants, the complaint here merely

asserts conclusorily that the unknown supervisor did "not properly supervis[e] …

Therefore, condoning and encouraging the unconstitutional and unlawful customs

of the officers."  Defendants argue that this allegation, without supporting facts, is

insufficient to establish liability and the claim against the "Unknown Supervisor"

should therefore be dismissed.

Plaintiff argues that his individual capacity claim against an "unknown

supervisor" for failing to supervise is valid.  Citing *Everson v. Lewis*,[3] plaintiff

contends that if a pattern of unlawful acts are being committed by officers and their

supervisor does nothing about their unlawful acts, then the supervisor has approved

and encouraged the unlawful behavior, subjecting the supervisor to liability.

Plaintiff points to a pattern of similar misconduct against the officers involved in

this claim, which he says are available via public records.

---

[3] Plaintiff did not provide a citation to this case.

Section 1983 liability may not be based on respondeat superior or vicarious liability.  *See Monell*, 436 U.S. at 691.  In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), or at least acquiesced in the alleged unconstitutional activity of a subordinate.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff must allege facts that would demonstrate that the "unknown supervisor" "either encouraged the specific incident[s] of misconduct or in some other way directly participated in it."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has noted, "supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.  Instead the liability must be based upon active unconstitutional behavior."  *Salepour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  There are no allegations in plaintiff's complaint suggesting any personal involvement of the "unknown supervisor" in the incidents in question or any facts demonstrating that such a person encouraged or participated in any misconduct.  Thus, the undersigned concludes that plaintiff's claim against the "unknown supervisor" fails and the motion to dismiss should be granted in this regard.

E.     <u>*Monell* Claim – Oakland County/Official Capacity of Individuals</u>[4]

"A plaintiff who sues a municipality for a constitutional violation under

§ 1983 must prove that the municipality's policy or custom caused the alleged

injury." *Ellis v. Cleveland Mun. Sch. Dist*., 455 F.3d 690, 700 (6th Cir. 2006)

(citing *Monell*, 436 U.S. at 690-91).  To prove the existence of a municipality's

policy or custom, plaintiffs can look to (1) the municipality's legislative enactments

or official agency policies; (2) actions taken by officials with final policy-making

authority; (3) a policy of inadequate training or supervision; or (4) a custom of

tolerance or acquiescence of federal rights violations.  *Thomas v. City of*

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In this case, defendants suggest that plaintiff has chosen the third avenue,

alleging that the County should be liable based on a failure to train or supervise

theory.  (Dkt. 1, Pg ID 7) (Plaintiff alleges that his constitutional rights were

violated by the "unknown name supervisor of police officers Brandon Scruggs,

Gilbert Garrett, and Kevin Braddock, for not properly supervising the above

officers, therefore condoning and encouraging the unconstitutional and unlawful

customs of the officers.").  To prevail on a failure to train claim, a plaintiff must

---

[4]  **Error! Main Document Only.**Individuals sued in their official capacities stand in the shoes of the entity they represent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009).  "[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S.at 690 n. 55.

establish three elements: (1) the training was inadequate for the tasks performed;
(2) the inadequacy was the result of the municipality's deliberate indifference; and
(3) the inadequacy was closely related to or actually caused the injury. *Ellis*, 455
F.3d at 700.

Defendants argue that plaintiff fails to make any allegations to support his
claim that the policies, practices, or customs of Oakland County caused, or
contributed to, the alleged excessive force.  Further, plaintiff fails to even indicate
which Oakland County policy(s), practices or customs, if any, are at issue in this
matter.  Thus, defendants maintain that plaintiff's § 1983 claim against Oakland
County should accordingly be dismissed.  Relatedly, defendants argue that
plaintiff's official capacity actions against the deputies should also be dismissed
since an official capacity action is nothing more than a suit against Oakland
County.  *See e.g.*, *Leach v. Shelby Cnty.*, 891 F.2d 1241, 1245-46 (6th Cir. 1989)
("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their
official capacities is, therefore, essentially and for all purposes, a suit against the
County itself."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official
capacity suit is, in all respects other than name, to be treated as a suit against the
entity.").

In response, plaintiff says he is pursing both a failure to train/supervise claim
and also a claim of a custom of tolerance or acquiescence of federal civil rights

violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Plaintiff asserts that supervisory liability exists even without personal participation in the offensive act if the supervisory official implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under § 1983. *Monell*, 436 U.S. at 700-01. Such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted).

Accordingly, to succeed on a *Monell* claim, a plaintiff first must allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. 658 at 691. A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat

superior theory." *Id*.  Second, a plaintiff must show that the alleged conduct qualifies as a policy.  *Monnell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690.  *Monell* liability may also attach where a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91.  A plaintiff must claim that "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Third, a plaintiff must show causation.  In other words, a plaintiff must connect the policy to the particular injury alleged.

The Supreme Court has specifically held that a city can be liable under § 1983 for inadequate training of its employees.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  As a matter of law, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id*. at 388-89.  The Court further instructed that liability may arise in cases where "in light of the duties assigned to specific officers or employees the need for more

or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390.  The Sixth Circuit has instructed that a plaintiff must prove three distinct facts to proceed on a § 1983 claim based on inadequate training: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury.  *See Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013).

Nothing in plaintiff's complaint suggests a sufficient basis for a *Monell* claim for failure to train or failure to supervise or any other theory.  Plaintiff's complaint contains only a conclusory allegation that the County did "not properly oversee[] and or manag[e] their employees, unknown name supervisor, therefore condon[ed] the misconduct…"  (Dkt. 1, Pg ID y).  Plaintiff's claim against the County presents as a classic claim of vicarious liability.  Plaintiff's complaint points to no policy, pattern, custom or practice, identifies no inadequate training program, and alleges nothing to support the notion that any policy or training program caused his alleged constitutional injury.  Thus, the undersigned concludes that plaintiff's claims against the County and the individual defendants in their official capacity cannot survive and should be dismissed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned recommends that defendants' motion to dismiss be **DENIED** in part and **GRANTED** in part.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

26

"Response to Objection No. 2," etc.  If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date: February 5, 2018            s/Stephanie Dawkins Davis
                                  Stephanie Dawkins Davis
                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 5, 2018</u>, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record and that I mailed by United States Postal
Service to the following non-ECF participant: <u>Raymone Knox #46439-039,
McKean Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 8000,
Bradford, PA 16701.</u>

                                  s/Tammy Hallwood
                                  Case Manager
                                  (810) 341-7887
                                  tammy_hallwood@mied.uscourts.gov